UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————————X

DEBORAH DANIEL,

                    Plaintiff,

          -against-                                    **OPINION & ORDER**
                                                       **CV-04-1073 (SJF)**

UNUMPROVIDENT CORPORATION,
UNUM LIFE INSURANCE COMPANY
OF AMERICA, LIB/GO TRAVEL, INC.
GROUP LONG TERM DISABILITY PLAN,
and LIB/GO TRAVEL, INC. GROUP LIFE
INSURANCE PLAN

                    Defendants.

————————————————————————X

FEUERSTEIN, J.

          Plaintiff Deborah Daniel ("plaintiff") commenced this action against defendants

UnumProvident Corporation ("UnumProvident"), UNUM Life Insurance Company of America

("UNUM Life"), Lib/Go Travel, Inc. Group Long Term Disability Plan, and Lib/Go Travel, Inc.

Group Life Insurance Plan (collectively, "defendants") under section 502(a) of the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), claiming, *inter alia,* that

she was improperly denied benefits under employee welfare benefit plans regulated by ERISA, as

amended, 29 U.S.C. §§ 1000-1461. By order dated March 13, 2006, I construed the parties'

cross motions for judgment on the pleadings as cross motions for summary judgment, see Muller

v. First Unum Life Ins. Co., 341 F.3d 119, 124 (2d Cir. 2003), granted defendants' motion,

denied plaintiff's motion and dismissed the complaint.[1]  Judgment was entered in favor of

---

[1] By order dated July 15, 2006, I denied plaintiff's motion for reconsideration of the
March 13, 2006 order.

1

defendants on March 23, 2006. By mandate entered February 27, 2008, the United States Court of Appeals for the Second Circuit vacated the judgment on the basis that I improperly declined to consider a General Services Agreement ("GSA"), dated December 29, 2000, between UnumProvident and UNUM Life and remanded the case for further proceedings. The parties submitted supplemental briefs following the remand in October and November 2009.

## I.  BACKGROUND

### A.  Factual Background

The following facts are taken from the administrative record, as well as the exhibits submitted by plaintiff on her motion[2]:

#### 1.  The Parties

Plaintiff was employed full-time as a branch manager at Lib/Go Travel, Inc. ("Lib/Go") from February 22, 1987 through March 5, 2002. (Administrative Record [R.], 152). As branch manager, plaintiff's duties involved "heavy telephone & computer work," managing the office and client problems, helping to empty boxes of brochures and store files in the basement and booking travel arrangements. (R. 154). According to a "Job Description" form completed by

---

[2] Although judicial review is generally limited to the record before the claims administrator, see Muller v. First Unum Life Ins. Co., 341 F.3d 119, 125 (2d Cir. 2003), the Second Circuit held that the concerns upon which that rule is premised are not implicated in this case by consideration of the GSA submitted by plaintiff on her motion, which was not included in the administrative record. Daniel v. UnumProvident Corp., No. 06-3774-cv (2d Cir. Jan. 24, 2008). Accordingly, and as directed by the Second Circuit, I have considered the GSA in rendering a determination on which standard of review to apply to defendants' denial of plaintiff's claims for benefits.

plaintiff's employer, plaintiff's job involved primarily sedentary work. (R. 213-215).

UnumProvident is a Delaware corporation and holding company. (Plaintiff's Memorandum of Law in Support of her Motion for Judgment on the Administrative Record [Plf. Mem.], Ex. A). UNUM Life is a Maine corporation and an indirect wholly owned subsidiary of UnumProvident. (Id.).

## 2. The Group Long Term Disability Insurance Policy

UNUM Life issued a group long term disability ("LTD") insurance policy ("the LTD policy"), effective November 27, 1994, insuring the "full-time active Executives and Managers * * *" of Lib/Go electing to participate in the plan. (R. 6). By application dated August 15, 1994, plaintiff elected to participate in the LTD plan. (R. 47).

UNUM Life would pay the LTD benefits under the policy. (R. 4). Paragraph 13 of the LTD policy provides, in relevant part:

> "In making any benefits determination under this summary of benefits, [UNUM Life] shall have the discretionary authority both to determine an employee's eligibility for benefits and to construe the terms of this summary of benefits."

(R. 23).

The LTD policy defines "disability" and "disabled" as follows:

> "[B]ecause of injury or sickness: (1) the insured cannot perform each of the material duties of his regular occupation; and (2) after benefits have been paid for 24 months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education or experience."

(R. 28).

In addition, Section IV of the LTD policy provides, in relevant part:

3

"When [UNUM Life] receives proof that an insured is disabled due to sickness or injury and requires the regular attendance of a physician, [UNUM Life] will pay the insured a monthly benefit after the end of the elimination period.[3] The benefit will be paid for the period of disability if the insured gives to [UNUM Life] proof of continued: (1) disability; and (2) regular attendance of a physician. * * *"

(R. 30).

### 3.    The Life Insurance Policy

UNUM Life also issued a lifestyle protection life insurance policy ("the life insurance policy"), effective January 29, 1995, insuring all full-time employees of Lib/Go. (R. 53). By application dated August 15, 1994, plaintiff elected to participate in the life insurance plan. By form dated July 10, 1997, plaintiff enrolled in the life insurance plan.

The life insurance policy contains a "Discretionary Authority" clause almost identical to the one in the LTD policy. (R. 68). The life insurance policy includes a disability benefit which extends an employee's life insurance during "total disability." (R. 55). An employee is totally disabled under the policy if "as a result of sickness or injury the employee is unable to perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education or experience." In order to qualify for an extension of life insurance coverage, *inter alia*, the "total disability" must be continuous for at least nine (9) months. (R. 79-80). Pursuant to the life insurance policy, once UNUM Life approved the "total disability," the employee's life insurance would be extended without further premium payments until it ceased under the termination provisions set forth in the policy. (R. 80).

---

[3] "Elimination period" is defined in the LTD policy as "a period of consecutive days of disability for which no benefit is payable. The elimination period is shown in the plan specifications and begins on the first day of disability." (R. 25).

4.     Plaintiff's Disability Claim

On or about August 15, 2002, plaintiff filed a claim under the LTD policy.[4] (R. 154). On the disability claim form, plaintiff described her disability as follows: "while sitting at work I started with sharp pains on right side & groin area. Then I got numbness and tingling down my legs. Hip pain on both sides. Neck pain & numbness on both arms." (R. 154). Plaintiff indicated that the disability impeded her ability to perform her occupational duties because she "cannot sit for more than 15 minutes without pain or stand for long & short time." (Id.).

5.     Plaintiff's Treating Physicians

Plaintiff was treated by Dr. Vincent Leone, an orthopedic surgeon, from February 6, 2002 until July 2002 for complaints of back pain traveling into her right hip and groin area and down the right leg, and for difficulty in sitting and lying down. Dr. Leone diagnosed plaintiff with a left lumber disc herniation at L3-4 and a right lumbar disc herniation at L5-S1. (R. 170). As of March 19, 2002, Dr. Leone restricted plaintiff from returning to work until further notice and from climbing, bending, twisting, pushing, pulling, lifting, carrying and prolonged sitting, standing and walking. (Id.). He further indicated that plaintiff had a "[s]evere limitation of functional capacity; [and was] incapable of minimal (sedentary) activity." (Id.). As of July 2002, Dr. Leone indicated that plaintiff had a permanent disability that would last greater than twelve (12) months. (R. 174). On plaintiff's disability claim form, Dr. Leone indicated that plaintiff was restricted from bending, twisting and lifting more than ten (10) pounds and that she was

---

[4] The claim form utilized by plaintiff was for policies issued by, *inter alia*, UNUM Life, a subsidiary of UNUMProvident Corporation. (R. 157). The claim form provided that it should be completed and sent to "Unum", at its Customer Care Center in Portland, Maine. (R. 157).

limited in standing or sitting in one position for longer than fifteen (15) minutes without a break. (R. 156). In addition, he indicated that plaintiff was ambulatory and not confined to bed, home or hospital. (Id.).

An MRI performed on plaintiff's lumbar spine at Next Generation Radiology (NGR) on February 13, 2002 revealed (1) "a small hemangioma * * * in the L1 vertebral body;" (2) "minimal loss of disc height with mild diffuse disc bulging * * * [and] a left lateral disc herniation which narrows the left neural foramen, abutting the exiting left L3 nerve root * * *," at the L3-4 level; (3) "[d]iffuse circumferential disc bulge * * * without focal disc protrusion, * * * bilateral ligamentum flavum hypertrophy with mild facet arthrosis [and] bilateral mild to moderate foraminal stenosis * * * without frank nerve root impingement" at the L4-5 level; (4) a "mild loss of disc height at L5-S1 with vacuum disc or mineralization * * *, circumferential mild bulging,* * * bilateral facet arthrosis, * * * moderate bilateral foraminal stenosis, * * * [and] right parasagittal and foraminal disc herniation with slight impingement upon the right S1 nerve root," at the L5-S1 level; and (5) "small nerve root sheath cysts at the L3-4 and L4-5 levels." (R. 168). Impression was of "multilevel discogenic and spondylotic changes * * * [particularly] a left lateral disc herniation at L3-4 extending into the left neural foramen and abutting the exiting left L3 nerve root * * * [and] a small right parasagittal and foraminal disc herniation at the L5-S1 level." (R. 191).

Beginning in March 2002, plaintiff was treated by Dr. Neil B. Kirschen, at the Pain Management Center of Long Island, for scoliosis. (R. 164). She underwent three lumbar epidural steroid injections for her pain on April 18, 2002, May 2, 2002 and June 17, 2002 at South Nassau Communities Hospital. (Id.).

On June 11, 2002, plaintiff was seen by Dr. Andrew J. Porges, a rheumatologist. Physical examination was normal except for "some diminished pin sensation in bilateral feet." (R. 220). Dr. Porges impression was of lumbar radiculopathy, but he referred plaintiff for neurodiagnostic evaluation and physiatrics consultation because of the "somewhat atypical nature of her complaints." (Id.).

An EMG performed on plaintiff by Dr. Eric S. Lippman on June 18, 2002 revealed right L-5 and left L-S radiculopathy. (R. 203). Dr. Lippman's physical examination of plaintiff revealed full range of motion and strength and normal sensation.

An MRI performed on plaintiff's cervical spine at NGR on July 18, 2002 revealed (1) multilevel disc degeneration; (2) "very mild bulging of the disc" at the C2-3 level; (3) "mild bulging of the disc without frank central or foraminal compromise" at the C3-4 level; (4) "very mild bulge of disc without frank central or foraminal compromise" at the C4-5 level; (5) "mild diffuse bulge of disc, * * * some bony endplate reactive change and uncovertebral disease, * * * [and] mild bilateral foraminal narrowing" at the C5-6 level; and (6) "a small central disc herniation * * * [that] abuts the ventral aspect of the thecal sac without frank cord compression," and mild narrowing of the central canal at the C6-7 level. Impression was of "[m]ultilevel disc degeneration. Small central disc herniation at C6-7. Mild foraminal compromise at C5-6." (Id.). In a report dated July 29, 2002, Dr. Leone indicated that the findings of this cervical MRI were "not enough to account for [plaintiff's] left upper extremity symptomology." (R. 181).

6.    UNUM Life's Doctors

UNUM Life referred plaintiff's claim for a medical review by Krista Poissant, a physical

7

therapist. In a report dated September 13, 2002, Poissant recognized the existence of plaintiff's lumbar disc herniations, but indicated that her symptoms were "[right] sided from the hip/groin area and into the calf–this distribution does not match with either of the findings on MRI." (R. 192). Poissant further indicated that "[t]he findings on MRI are significant but it is unclear how they correlate with [plaintiff's] symptoms. [Attending physician, Dr. Leone] gives [plaintiff] sedentary capacity but states that she needs to change position every 15 minutes. [Plaintiff's] reported activities seem to support that she would tolerate more activity than this." (Id.).

In a subsequent report dated September 27, 2002, Poissant indicates as follows:

> [Part of the EMG findings] are based on paraspinal findings, which would not be supportive of a true radiculopathy. Additionally, there are multiple inconsistencies. [Plaintiff complained of] hip and groin pain which would not correlate with the EMG findings and she also [complained of right] leg pain–the MRI was [positive] for findings on the [left]. [Plaintiff] also reports that she is fairly active at home. [Attending physician, Dr. Leone] gives [restrictions and limitations] indicating that she needs to change positions every 15 minutes. These [restrictions and limitations] appear to be more restrictive than what [plaintiff's] activities indicate. Due to multiple inconsistencies and [plaintiff's] reported activity, impairment not supported." (R. 229).

In a report dated October 1, 2002, Dr. Robert Keller, an orthopedist who also conducted a medical review of plaintiff's claim, agreed with Poissant's report. Dr. Keller indicated, in relevant part, as follows:

> A cervical MRI was not significant and does not support neck and upper extremity symptoms. The MRI reports do not correlate with the EMG report which itself is questionable. [Restrictions and limitations] are generally consistent with sedentary work capacity. There is no documentation for the 15 minute max. sitting requirement. * * * [T]here is not sufficient objective information to support [plaintiff's] inability to perform a sedentary occ[upation]." (R. 229).

UNUM Life also referred plaintiff for a vocational rehabilitation review with Bruce Hoffman, M.Ed., LPC, CRC, to clarify plaintiff's occupational duties. In a report dated October

2, 2002, Hoffman indicated that plaintiff's primary duties involved managing a travel agency which required occasionally lifting, carrying, pushing and pulling ten (10) pounds and frequently reaching, handling, fingering, talking, hearing and near acuity, and could also include walking and/or standing for brief periods of time. (R. 209). In a subsequent note dated October 3, 2002, Hoffman indicated that plaintiff's occupation would also require frequent sitting, but would allow for changes in position as needed. (R. 210).

In a report dated October 9, 2002, Dr. John LoCascio, a practitioner of internal medicine who also reviewed plaintiff's claim, indicated that new medical information did not significantly alter the prior conclusions in the file and that the lab data did not contain significant abnormalities. (R. 230).

### 7.    Unum Life's Decision

By letter dated August 27, 2002, UNUM Life requested that plaintiff provide it with additional information regarding her restrictions and limitations and the requirements of her occupation, as well as medical documentation supporting her claims of other conditions and symptoms that may have impacted her recovery and treatment. (R. 389).

By letter dated October 21, 2002,[5] UNUM Life advised plaintiff that after reviewing medical information from Drs. Leone, Porges, Lippman, Kramer and Kirshen, and the results of the diagnostic tests performed, it was unable to approve benefits under the LTD policy or the waiver of premium claim under the life insurance policy. (R. 232). UNUM Life's decision

---

[5] Although the letter contained the UnumProvident logo, it was written under UNUM Life letterhead.

indicates, in pertinent part, as follows:

In their review of the medical information available in your claim our medical personnel have determined that although you have complained of, and there is some support for radiculopathy, that there are multiple inconsistencies both in your reported pain and the objective findings. Specifically you have complained of hip and groin pain which does not correlate with the EMG findings, and you have also complained of right leg pain where the MRI findings indicate left leg findings. Based on the objective findings your symptoms do not appear to be consistent with true radiculopathy.

The medical records currently in your file indicate that despite the numerous doctors' [sic] you have seen and the various diagnostic procedures that have been performed, the only treatment that you have undergone was one series of epidural injections * * *.

Additionally, your stated level of activity is inconsistent with the restrictions and limitations given by your attending physician, Dr. Leone. * * * [Dr. Leone's] restrictions appear to be far more restrictive than what you are actually able to do on a daily basis. You have indicated that you are able to empty the dishwasher, walk the dog, do paperwork, do the grocery shopping, exercise in the pool, cook meals, and go to church. We recognize that you have indicated that you also lay down and ice your back, but this does not appear to significantly impact your daily functioning. Your level of functional ability coupled with a lack of objective evidence do not support an inability to perform at a sedentary work capacity.

* * *

Therefore we have determined that your restrictions and limitations do not prevent you from performing the material and substantial duties of your occupation and are not considered to be disabled as defined by your [LTD] policy. Since you are not disabled from your own occupation you wouldn't be disabled from any occupation and therefore will not qualify for Life Waiver of Premium.

* * *

(R. 232-235).

8.      Plaintiff's Appeal

By letter dated January 13, 2003, addressed to both UNUM Life and UnumProvident at the same address, plaintiff's counsel advised that plaintiff intended to appeal UNUM Life's decision and requested certain documentation from UNUM Life and/or UnumProvident. (R. 237). By letter dated March 14, 2003, which was again addressed to both UNUM Life and UnumProvident, plaintiff's counsel renewed his request for documentation and provided additional medical documentation in support of plaintiff's claim. (R. 241).

a.      Additional Medical Documentation

A surgical report, dated October 5, 2000, from Dr. Frank indicates that plaintiff was diagnosed with celiac disease following an upper endoscopy. (R. 291). A biopsy report, dated October 10, 2000, from South Nassau Communities Hospital indicates that findings were consistent with celiac sprue disease. (R. 292).

A record from Dr. Leone dated July 10, 2002 indicates that plaintiff presented "after a hiatus" for a flare-up of low back pain with radicular symptoms to both legs. (R. 269). Dr. Leone noted, *inter alia*, that plaintiff did not "have any significant problems regarding the lower back which warrant[ed] urgent intervention." (Id.). Dr. Leone recommenced plaintiff undergo an MRI of the cervical spine to rule out a herniated disc or stenosis. (Id.).

Records from the Pain Management Center of Long Island indicate that as of July 17, 2002, plaintiff stated that her low back pain was feeling "much better" and did not occur as often or last as long as it had previously, and that her leg pain had stopped. (R. 281). Plaintiff complained of numbness in her left arm and neck pain. (Id.).

11

An MRI of plaintiff's right shoulder, performed on October 10, 2002 at NGR, revealed: (1) an area of small focal degeneration and/or partial intrasubstance/articular surface tearing in the supraspinatus tendon; and (2) no significant degenerative change of the acromioclavicular joint or impingement. (Id.). (R. 279-280).

A record from Dr. Leone dated October 21, 2002 indicates that an MRI of plaintiff's right shoulder revealed a partial tear of the rotator cuff and that the plaintiff received an injection of Celestone and Xylocaine in the subacromial space of her shoulder. (R. 267). In addition, the record indicates that plaintiff also complained of right knee pain. (Id.) Dr. Leone diagnosed plaintiff with right knee sprain. (Id.). A record from Dr. Leone dated November 13, 2002 indicates that the plaintiff received a second injection in her shoulder. (R. 266).

An MRI of plaintiff's right knee, performed on November 14, 2002 at NGR, revealed degeneration of the medial meniscus and moderate cartilage wear over the patella with mild cartilage degeneration in the medial femorotibial joint compartment. (R. 275-276).

A report from Dr. Stuart Kaplan dated November 18, 2002 indicates that plaintiff continued to complain of pain in her legs and numbness in her arms and hands. Dr. Kaplan's impression was of, *inter alia*, degenerative disc disease and cervical and lumbar radiculopathy.

On December 18, 2002, plaintiff was examined by Ellen Rader Smith, an occupational therapist, to assess her functional abilities. In her report dated January 17, 2003, (R. 258-265), Smith indicated, *inter alia*, that plaintiff is "independent in self care;" has difficulty elevating her right arm; has weakness in her hands when opening jars; has limited tolerance to perform household chores; has intermittent numbness in her forearms and hands when working in the kitchen; makes small trips to the grocery store during off-hours to avoid carrying more than light

12

bags and standing in long lines, and limits her total time at the store to thirty (30) minutes; limits her shopping at the mall to forty-five (45) to sixty (60) minutes with periodic sitting breaks and her driving distances to ten (10) minutes; and limits her writing. According to Smith, plaintiff's duties at the travel agency required her to sit for a majority of the ten (10)-hour day, to spend ninety percent (90%) of her time on the computer and telephone and to spend anywhere from fifteen (15) minutes to three (3) hours with a client. Smith noted that plaintiff indicated, *inter alia*: that she can only sit for twenty (20) to thirty (30) minutes, can only stand for ten (10) minutes and can only walk for about twenty (20) minutes; that she limits the weight that she carries to less than five (5) pounds with each hand; and that she is limited in her ability to bend, kneel, squat and reach overhead. Smith reported that on the EPIC Spinal Function Sort test, plaintiff's perceived physical abilities indicated less than sedentary work capacities. Smith's opinion after examination was that plaintiff had limited physical capabilities and tolerances to sit and stand; had a maximum sit time of forty-five (45) minutes and stand time of twenty-five (25) minutes; had mild losses of cervical and lumbar mobility; had reduced hand strength bilaterally; had a writing tolerance of less than fifteen (15) minutes; and was limited in her ability to lift to objects weighing less than five (5) pounds. According to Smith, plaintiff's work at the travel agency was associated with sedentary job demands and plaintiff's limited sitting tolerance prevented her from returning to work where prolonged sitting is required. In addition, Smith indicated that "[a]lternate sitting and standing postures for 8-hours is not feasible for [plaintiff], as only lying down relieves her pain. [Plaintiff's] tolerance to alternate sitting and standing throughout the day also decreases." (R. 265). Smith reported that "until [plaintiff's back pain can be controlled, [she] is unable to resume her work in the travel agency or in any sedentary

13

work situation where sitting is required throughout the day, and on a consistent basis." (Id.).

b. Subsequent Steps on Appeal

By letter dated April 21, 2003, addressed to both UNUM Life and UnumProvident, plaintiff's counsel, *inter alia*, requested that "UNUM" reconsider the denial of plaintiff's claim. Specifically, plaintiff's counsel indicated as follows:

> "[UNUM's] denial suggests that [plaintiff], who worked for 15 years at Liberty Travel, is not to be believed because of a perceived inconsistency in her EMG and the MRI and also because her complaints of radiating pain are also supposedly inconsistent with those diagnostic studies. It doubts she has a 'true radiculopathy.' This 'reasoning' suggests that [plaintiff] must prove disability beyond a reasonable doubt or that any conceivable doubt is sufficient to justify denial of her claim. While it may be true that [plaintiff's] low back pain complaints are primarily right-sided, both the lumbar MRI and EMG * * * indicated bilateral conditions. * * * [T]he left-sided symptoms are likewise supported. There's no question that right-sided symptoms are supported by these tests * * *. Nor is [plaintiff's] credibility defeated because of complaints of groin or right hip pain, since they may be nothing more than how her pain has radiated * * *. Finally, further 'objective information' * * * is provided by the testing and evaluation by [Smith], making it abundantly clear that [plaintiff] is unable to perform sedentary work * * *."

(R. 320-322).

By letter dated May 12, 2003, UNUM Life acknowledged receipt of plaintiff's appeal and advised that, unless special circumstances required additional time, it would attempt to make a determination within forty-five (45) days; but that in any event it would make a determination no later than ninety (90) days from receipt of the appeal. (R. 416).

By letter dated June 3, 2003, UNUM Life notified plaintiff's counsel that it required an extension of up to forty-five (45) days to make a decision on the appeal because plaintiff's file was being reviewed by a member of its medical department. (R. 417).

14

Plaintiff submitted additional medical documentation for consideration on the appeal on July 24, 2003, (R. 328), and August 11, 2003, (R. 333).

c.  Additional Medical Records

An entry on a medical record from Dr. Leone dated February 19, 2003 indicates that following two (2) slip and fall accidents, plaintiff complained of pain in her right shoulder, right knee and right foot. (R. 335). Examination revealed full range of motion of the right shoulder and both knees; tenderness to palpation over the anterior portion of the shoulder and biceps tendon and subacromial space; and mildly positive impingement sign. (Id.). Dr. Leone noted that this visit followed a hiatus. (Id.).

An MRI of plaintiff's right shoulder, performed on February 28, 2003, revealed mild motion degradation, focal edema and small joint effusion with a small to moderate amount of bicipital fluid. (R. 337-338).

A record from Dr. Leone dated April 28, 2003 indicates that plaintiff complained of pain in her right shoulder. (R. 334). Examination revealed tenderness to palpation over the medial border of the scapula that did not follow any anatomic line or muscular compartment. (Id.). Impression was of peripheral neuropathy. (Id.).

An EMG of plaintiff's right upper extremity and shoulder region, performed by Lippman on July 17, 2003, revealed right C5-C6 radiculopathy.

An MRI of plaintiff's lumbar spine performed on September 18, 2003 at Long Island Radiology Associates, P.C., revealed scoliosis; grade I anterior spondylolisthesis without spondylolysis at L5-S1; moderate degenerative spondylosis associated with disc space narrowing,

15

vacuum disc, as well as mild spondylitic ridging at L5-S1; and facet arthropathy consistent with osteoarthritis at L4-5 and L5-S1. (R. 342).

#### d. UNUM Life's Review

By letter dated September 12, 2003, UNUM Life apologized to plaintiff's counsel for its delay in informing him of the status of plaintiff's claims and advised that the file had been referred back to its medical department for further review and that upon completion of that review, it would be referred to UNUM Life's vocational department for an occupational review. (R. 418).

Dr. George G. Fluter, who is board certified in physical medicine and rehabilitation, reviewed plaintiff's file and additional medical records on September 18, 2003. (R. 339-340). Dr. Fluter noted as follows:

> "[b]ased upon the available information and to a reasonable degree of medical probability, [plaintiff] has multilevel degenerative changes affecting the cervical spine with electrodiagnostic evidence of right C5-C6 radiculopathy. There are multilevel changes affecting the lumbar spine with left lateral disc herniation abutting the L3 nerve root and a right parasagittal and foraminal disc herniation impinging the L5 nerve root. There is associated electrodiagnostic evidence of left lumbosacral radiculopathy and right L5 radiculopathy; these findings are compatible structurally and electrodiagnostically. There are also structural changes of the right shoulder and the right knee that appear to be degenerative in nature. The results of the [Functional Work Capacity Evaluation] suggest that the [plaintiff] has sub-average manual dexterity and that she is incapable of sedentary activities; however, subjective information from the [plaintiff] was combined with observations made during the 2.5 hour-long evaluation. The nature of the [plaintiff's] impairments would support [restrictions and limitations] at the Sedentary level of physical demand with allowance for frequent position changes and avoidance of bending, twisting and stooping; repetitive overhead work should be avoided because of the cervical spine and right shoulder impairments; repetitive kneeling, squatting, crawling and climbing should be avoided because of the right knee impairment." (R. 340).

In response to an inquiry by UNUM Life's appeals specialist as to whether plaintiff's symptoms were consistently reported in the records, Dr. Fluter answered that the symptoms were "not always consistent from visit to visit. However, this is not an uncommon situation in clinical medicine because conditions may evolve or be influenced by treatments." (R. 340). In addition, Dr. Fluter responded affirmatively in response to UNUM Life's inquiries as to whether plaintiff's complaints appeared credible and consistent and whether the medical treatment was adequate. (Id.).

On October 8, 2003, at UNUM Life's request, Richard Byard, a Senior Vocational Rehabilitation Consultant, completed a review of the occupational information contained in plaintiff's file, including plaintiff's job description and the prior occupational clarification provided by Hoffman. (R. 362-363). Byard concluded that plaintiff's occupation as a travel agency manager

> "is one that is performed in an office-based setting at a sedentary level of physical exertion. Consistent with [plaintiff's] job description data and with the manner in which this occupation is generally performed, the material and substantial duties of this work generally allow for frequent postural changes (sit/stand/walk) and do not call for bending, twisting, overhead work or repetitive kneeling, squatting, crawling, or climbing. [Plaintiff's restrictions and limitations] would not preclude [her] from performing the material and substantial duties of her occupation."

(R. 363).

e.    UNUM Life's Decision

By letter dated October 10, 2003, UNUM Life advised plaintiff's counsel that it determined that the denial of plaintiff's claim was appropriate. (R. 343). Specifically, UNUM

Life stated, in pertinent part, as follows:

> "In Summary, the Long Term Disability policy * * * states that [plaintiff] is considered to be disabled if she cannot perform each of the material duties of her own occupation. Upon appeal, our medical department reviewed the entirety of [plaintiff's] medical records, which included additional information and determined that [plaintiff's] impairments are not of such severity as to preclude her from having sedentary work capacity, which according to our vocational department would not preclude her from performing the material duties of her own occupation. * * *
>
> As it has already been determined that [plaintiff] has the work capacity necessary to perform the material duties of her own occupation, it is our determination that she is also not considered to be totally disabled as defined by the Group Life policy; and therefore, not eligible for that benefit. Based on the above information, it is our determination that the decision to deny [plaintiff's] Long Term Disability claim and Extension Of Employee Life Insurance During Total Disability claim was appropriate and we are upholding that determination.
>
> * * *
>
> On October 8, 2003, we received copy of a September 18, 2003 x-ray report of [plaintiff's] lumbar spine from Long Island Radiology Associates, P.C. The relevant time period of our review is when [plaintiff] stopped working on March 6, 2002 and it has already been determined that she did not meet the definitions of disability at that time. Therefore, [plaintiff's] Long Term Disability benefits ceased the date she was no longer disabled; and because [plaintiff's] file does not contain any evidence that she was given a leave of absence by her employer, her Group Life Insurance coverage terminated when she was no longer actively employed as defined by the policy. Therefore, any worsening of [plaintiff's] condition and any new conditions are not covered.

(R. 346-349). UNUM Life further advised plaintiff of her right to bring a civil suit under section 502(a) of ERISA in the event she disputed its determination. (R. 349).

B.    Procedural History

On March 15, 2004, plaintiff commenced this action against defendants under section

18

502(a) of ERISA, 29 U.S.C. § 1132(a).

In September and October 2004, the parties cross-moved for judgment on the administrative record, which I construed as cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. By order dated March 13, 2006, I granted defendants' motion, denied plaintiff's motion and dismissed the complaint.[6] Judgment was entered in favor of defendants on March 23, 2006.

By mandate entered February 27, 2008, the United States Court of Appeals for the Second Circuit vacated the judgment on the basis that I improperly declined to consider the GSA submitted by plaintiff in support of her cross motion, but not included in the administrative record, and remanded the case for further proceedings. Defendants' subsequent request for an opportunity to either reach a stipulation concerning the GSA or to submit supplemental briefing on the remand was granted. In October and November 2009, the parties submitted supplemental briefs following the remand.

II.     ANALYSIS

A.      Parties' Contentions on Remand

In her supplemental brief, plaintiff contends, *inter alia*: (1) that UnumProvident, not UNUM Life, made the determination to deny her claims for benefits and, thus, the determination is subject to a *de novo* standard of review because the plan only granted discretionary authority to UNUM Life to determine benefits claims and did not include a provision authorizing UNUM

---

[6] By order dated July 15, 2006, I denied plaintiff's motion for reconsideration of the March 13, 2006 order.

Life to delegate its discretionary authority; (2) that, in any event, defendants' pattern or practice of unreasonably denying meritorious claims warrants *de novo* review of the determination to deny plaintiff's claims for benefits in this case; (3) that even if a deferential standard of review is applied, UnumProvident's late decision, issued one hundred forty-two (142) days after plaintiff's claim had been appealed in violation of the procedural requirements of applicable ERISA regulations, establishes its abuse of discretion in denying plaintiff's claims for benefits; and (4) that UnumProvident's decision was not reasonable because it "selective[ly] review[ed] the facts, misconstrue[ed] diagnostic findings, ignor[ed] [the opinions of] Dr. Leone [plaintiff's treating orthopedist], and even dismiss[ed] objective testing of functional capacity * * *," (Plaintiff's Supplemental Brief Following Remand by Court of Appeals [Plf. Brief], p. 21).

In their supplemental brief, defendants contend, *inter alia*: (1) that the GSA confirms that UNUM Life, not UnumProvident, denied plaintiff's claim and, thus, the deferential "arbitrary and capricious" standard of review is appropriate; (2) that, in any event, UNUM Life had the power to delegate its discretionary authority to UnumProvident and, thus, even if UnumProvident made the determination to deny plaintiff benefits, that determination is still subject to the deferential standard of review; (3) that since I previously considered UNUM Life's conflict of interest as a factor in reviewing its determination to deny plaintiff benefits, my previous analysis of that determination remains valid; and (4) that even upon *de novo* review, the determination to deny plaintiff benefits should be confirmed.

B.     Standard of Review

A denial of benefits under ERISA "is to be reviewed under a *de novo* standard unless the

benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Conkright v. Frommert, 130 S.Ct. 1640, 1646, 176 L.Ed.2d 469 (2010) (quoting Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). Plans which invest the administrator or fiduciary with such discretionary authority are reviewed under a deferential arbitrary and capricious standard. See Hobson v. Metropolitan Life Ins. Co., 574 F.3d 75, 82 (2d Cir. 2009); McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 130, 132-3 (2d Cir. 2008). This deferential standard of review "means only that the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" Conkright, 130 S.Ct. at 1651 (quoting Firestone, 489 U.S. at 111, 109 S.Ct. 948); see also McCauley, 551 F.3d at 132 (defining "arbitrary and capricious" to mean "without reason, unsupported by substantial evidence or erroneous as a matter of law.") "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance." Durakovic v. Bldg. Serv. 32B J Pension Fund, 609 F.3d 133 (2d Cir. 2010). The scope of review is narrow and prohibits a court from substituting its "own judgment for that of [the insurer] as if [the court] were considering the issue of eligibility anew." Hobson, 574 F.3d at 84 (quoting Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995)).

"[A] deferential standard of review remains appropriate" even where, as here, discretionary authority is granted to a plan administrator who both evaluates claims for benefits and pays benefits, resulting in a conflict of interest. Conkright, 130 S.Ct. at 1646; Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 128 S.Ct. 2343, 2348-50, 171 L.Ed.2d 299 (2008). The conflict of interest is but one factor to be considered in determining whether the administrator's

decision was arbitrary and capricious, <u>Metropolitan Life</u>, 554 U.S. 105, 128 S.Ct. at 2347-8;

<u>McCauley</u>, 551 F.3d at 133, "even where the plaintiff shows that the conflict of interest affected

the choice of a reasonable interpretation." <u>McCauley</u>, 551 F.3d at 133; <u>see also</u> <u>Hobson</u>, 574

F.3d at 83 ("A plaintiff's showing that the administrator's conflict of interest affected the choice

of a reasonable interpretation is only one of several different considerations that judges must take

into account when review[ing] the lawfulness of benefit denials." (internal quotations and

citation omitted)).

1.    Who Made the Benefits Determination?

The parties do not dispute that the plans grant UNUM Life broad discretionary authority

to determine eligibility for benefits. Thus, if UNUM Life made the determination to deny

plaintiff benefits, than the arbitrary and capricious standard of review applies to that

determination. On the other hand, if UnumProvident made the determination, the standard of

review is *de novo*.

Plaintiff contends that UnumProvident, not UNUM Life, actually rendered the

determination on plaintiff's claim, thus triggering *de novo* review. In support of this assertion,

plaintiff submits: (1) an "Insurance Holding Company System Annual Registration Statement"

dated February 28, 2002, indicating, in relevant part, (a) that UNUM Life is owned eighty-two

point seventy-two percent (82.72%) by Unum Holding Company ("Unum Holding"), a direct

wholly owned subsidiary of UnumProvident, and seventeen point twenty-eight percent (17.28%)

by UnumProvident, and (b) that UNUM Life became an indirect wholly owned subsidiary of

UnumProvident on June 30, 1999, (Plf. Mem., Ex. A); and (2) the GSA between UnumProvident

and UNUM Life, effective January 1, 2001, (Plf. Mem., Ex. B).

Defendants contend that the determination to deny plaintiff's claims for benefits was made by UNUM Life, acting through agents.

"The factual issue of who actually made the benefit determination must be resolved before a court can properly decide whether or not to uphold the [benefits] determination." Sharkey v. Ultramar Energy Ltd., Lasmo plc, Lasmo (AUL Ltd.) 70 F.3d 226, 229 (2d Cir. 1995). Only determinations made by administrators or fiduciaries clearly granted or delegated discretionary authority under the terms of the relevant plan are entitled to review under the deferential arbitrary and capricious standard. See Tocker v. Philip Morris Companies, Inc., 470 F.3d 481, 487 (2d Cir. 2006) (holding that a court will defer to the decision of an administrator who is clearly granted discretionary authority in the plan documents); Nichols v. Prudential Ins. Co. of America, 406 F.3d 98, 108 (2d Cir. 2005); Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 251 (2d Cir. 1999). Thus, when a decision to deny benefits is made by an entity without clear discretionary authority, the standard of review is *de novo*. See McCauley, 551 F.3d at 132 (holding that courts must review *de novo* a denial of plan benefits unless the plan grants the administrator discretionary authority to determine eligibility for benefits); Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 108 (2d Cir. 2008). "Whether the proper administrator made the benefit determination is a question of fact for the district court on which the administrator bears the burden of proof." Zurndorfer v. Unum Life Ins. Co. of America, 543 F.Supp.2d 242, 256 (S.D.N.Y. 2008).

Pursuant to the GSA, UnumProvident "assumed the employ of certain personnel" and agreed to provide certain services to UNUM Life "as required by [UNUM Life] in accordance

with specifications and requirements of [UNUM Life] * * *." (Plf. Mem., Ex. B, p. 1, § 1.1). The services to be rendered to UNUM Life by UnumProvident under the GSA include, *inter alia*, claims management services, involving the review of claims and medical files; the determination of whether claims are payable; the maintenance and search of databases; interviews with doctors, attorneys, employers and employees; and the processing of claims for payment. (Plf. Mem., Ex. B, Appendix A).

The GSA provides, in relevant part: (1) that "UNUMProvident employees ('Associates') must satisfy those standards established by [UNUM Life] * * *," (Id. at § 1.3); and (2) that "UNUMProvident shall maintain the exclusive right to exercise direction and control over Associates performing Services for [UNUM Life]," (Id. at § 1.4). In addition, Section 1.5 of the GSA provides that: "[t]he performance of the Services by UNUMProvident for [UNUM Life] under this [GSA] shall in no way impair the absolute control of the business and operations of UNUMProvident or [UNUM Life] by their respective Boards of Directors. UNUMProvident shall not hereunder [sic] so as to assure the separate operating identity of [UNUM Life]. The Services [rendered by UnumProvident] shall at all times be subject to the direction and control of the Board of Directors of [UNUM Life]." (Id. at § 1.5). Furthermore, Section 8 of the GSA provides that: "UNUMProvident is engaged in an independent business and will perform its obligations under this [GSA] as an independent contractor and not as the employee, partner or agent of [UNUM Life]; that the Associates performing Services under this [GSA] are not employees of [UNUM Life]; that UNUMProvident has and hereby retains the right to exercise full control of and supervision over the performance of UNUMProvident's obligations under this [GSA] and full control over the employment, direction, compensation and discharge of all

Associates assisting in the performances of such obligations; that UNUMProvident will be solely responsible for all matters relating to payment of such Associates * * *; and that UNUMProvident will be responsible for UNUMProvident's own acts and those of UNUMProvident's Associates during the performance of UNUMProvident's obligations under this [GSA]. Notwithstanding the foregoing, from time to time [UNUM Life] may advise UNUMProvident of matters on which Associates shall have authority to act on behalf of [UNUM Life] and bind it in dealings with third parties." (Plf. Mem., Ex. B, § 8).

Contrary to plaintiff's contention, the record before this Court, including the GSA, does not establish that UnumProvident made the decision to deny plaintiff's claims for benefits in this case. Although the letters sent to plaintiff regarding the denial of her claims contain the logo of UnumProvident, UNUM Life's parent company, they were all sent under UNUM Life letterhead and there is no evidence indicating that UnumProvident actually made or influenced the decision to deny plaintiff's claim for benefits. See, e.g. Johnson v. UNUM Life Ins. Co. of America, 329 F.Supp.2d 161, 171 (D.Me. 2004)(finding that the record did not establish that UnumProvident, rather than UNUM Life, made the decision to terminate the plaintiff's benefits, and did not create a trialworthy issue as to whether UnumProvident was ultimately responsible for the decision to terminate the plaintiff's benefits, notwithstanding that the letterhead informing plaintiff of the denial suggested that it was coming from UnumProvident); Burchill v. UNUM Life Ins. Co. of America, 327 F.Supp.2d 41, 53-54 (D.Me. 2004)(finding that the record did not establish that UnumProvident, rather than UNUM Life, made to decision to deny plaintiff's claim, notwithstanding that the letters denying plaintiff's claim referenced UnumProvident with respect to an appeal and that another letter was sent on UnumProvident stationery, where the letters sent

25

to plaintiff suggested that it was UNUM Life which in fact denied the plaintiff's claim).

Although the GSA suggests that an UnumProvident employee or associate may have been involved in the claims management process, the evidence in the record does not show that the individual(s) who made the determination to deny plaintiff's claims for benefits in this case were not authorized by UNUM Life to make claims decisions on UNUM Life's behalf. See, e.g. Zurndorfer, 543 F.Supp.2d at 256 (rejecting the plaintiff's claim that the claims determination was made by UnumProvident, not Unum America, because at most, the evidence in the record suggested that one of the individuals who made the determination was an employee of UnumProvident, but did not show that any of the individuals who made the determination were not authorized by Unum America to make claims decisions on Unum America's behalf). The GSA merely evidences that UNUM Life may have discharged its claims management duties, including its benefits determinations, with the involvement of individuals employed by, or otherwise affiliated with, its parent corporation, UnumProvident. See, e.g. Zurndorfer, 543 F.Supp.2d at 256. As stated by the district court in Zurndorfer:

> "As a corporation, [UNUM Life] can only act through its agents, and there is no indication that [the individuals who made the determinations to deny plaintiff's claims for benefits] were not acting as [UNUM Life's] agents when they made decisions related to plaintiff's claims. * * * Here, the parties contracted for [UNUM Life] to make the benefit determinations, and it is beyond dispute that authorized agents of [UNUM Life], whatever their other roles within UnumProvident structure[,] acted as claims administrators. * * * Moreover, there is no competent evidence before the Court to suggest that the contractual provision granting [UNUM Life] discretionary authority precluded [UNUM Life] from acting through agents that were employed by its parent."

543 F.Supp.2d at 257.

Plaintiff's reliance on Anderson v. UNUM Life Ins. Co. of America, 414 F.Supp.2d 1079

(M.D.Ala. 2006), is misplaced. While the Alabama district court in <u>Anderson</u> found that UnumProvident, rather than UNUM Life, made the decision to deny the plaintiff's claim under a GSA containing relevant provisions substantially similar to those in this case, there was also evidence in that case, *inter alia*: (1) that the letters sent to the plaintiff were on letterhead preprinted with UnumProvident's name and address and were authored by an individual employed in UnumProvident's customer care center; (2) that the initial denial letter contained UnumProvident's telephone number for the plaintiff to call if she had any questions; (3) that a customer care specialist employed by UnumProvident requested a referral agency to review the plaintiff's claim and testified that he based his denial of the plaintiff's claim primarily on the opinion of the individual associated with that referral agency; (4) that the plaintiff was advised to send any appeal to UnumProvident; and (5) that the letter advising the plaintiff that the denial of her claim was upheld on appeal was authored by an appeals consultant employed by UnumProvident. <u>Id.</u> at 1086-7, 1098-1100. To the contrary, in this case the letterhead on the correspondence to plaintiff regarding the initial denial and review of her claims was preprinted with UNUM Life's name and address, (R. 232, 389, 401, 416), and the August 27, 2002 correspondence advised plaintiff to contact Matthew Williams ("Williams"), the customer care specialist assigned to plaintiff's claims, at the toll-free number designated on the UNUM Life letterhead, (R. 390), thus establishing that the determination to deny plaintiff's claims was coming from UNUM Life. Such evidence of UNUM Life's involvement in the decision-making process was found lacking by the district court in <u>Anderson</u>.[7] Furthermore, unlike in <u>Anderson</u>,

---

[7] Although correspondence to plaintiff's counsel dated October 10, 2003, advising that the determination to deny plaintiff's claims was upheld on appeal, was on First Unum Life Insurance Company letterhead and authored by Jeffrey Weeks ("Weeks"), in his capacity as a

27

there is other evidence in the record of UNUM Life's involvement in the decision-making process. For example: (1) there is a message to Williams from another customer care specialist identified as "Arin Joudrey/UNUM America"[8] that he advised plaintiff on August 26, 2002 that her claims were "in review," (R. 383); and (2) there is a message from another customer care specialist identified as "Lisa V. Lekousi/UNUM America" on April 18, 2003 that plaintiff had called regarding her claim file, (R. 413). Accordingly, the record establishes that plaintiff's contact regarding her claims for benefits was with UNUM Life, not UnumProvident.

In sum, the record evidence indicates that the claims determination in this case was made under UNUM Life's name and plaintiff has failed to proffer any evidence to the contrary sufficient to raise a material issue of fact requiring a trial. Since the record in this case indicates that UNUM Life, not UnumProvident, made the decision to deny plaintiff's claim, albeit with the potential involvement of UnumProvident employees, acting on UNUM Life's behalf, in the claims management process, the appropriate standard of review of the denial of plaintiff's claims for benefits is the deferential arbitrary and capricious standard.[9]

---

senior appeals specialist, (R. 343, 419), correspondence dated the same date and sent to plaintiff's employer, also advising that the determination to deny plaintiff's claims was upheld on appeal, was also authored by Weeks in his capacity as senior appeals specialist, but was sent on UNUM Life letterhead. (R. 351, 426). Similarly, earlier correspondence from Weeks to plaintiff's counsel, dated May 12, 2003, June 3, 2003 and September 12, 2003, respectively, were sent on UNUM Life letterhead. (R. 416-418). Both letterheads contain the same address and telephone numbers, and the contact number designated by Weeks is also the same.

[8] UNUM Life is alternatively referred to as UNUM America. (See, Plf. Mem., Ex. A).

[9] In light of this determination, it is unnecessary to consider defendants' alternative argument that UNUM Life had the power to delegate its discretionary authority to UnumProvident.

2. Litigation History

Contrary to plaintiff's contention, a plan administrator's history of biased claims administration does not affect the standard of review. Rather, a history of biased claims administration is just one of the factors to be considered in determining whether there has been an abuse of discretion. See Metropolitan Life, 128 S.Ct. at 2350; McCauley, 551 F.3d at 137. As such, that factor will be considered below, in combination with other relevant factors, upon my deferential review of UNUM Life's determination to deny plaintiff's claims for benefits.

C. Review of Determination to Deny Plaintiff's Claims for Benefits

1. Conflict of Interest and History of Biased Claims Administration

There is no evidence in the record that UNUM Life was actually influenced by the inherent conflict of interest resulting from its dual role as both plan administrator and payor in determining plaintiff's eligibility for benefits under the plans. Nonetheless, as in my prior order, the existence of UNUM Life's inherent conflict of interest in this case has been given some weight during my review of its determination to deny plaintiff's claims for benefits. As the Supreme Court stated: "[A] conflict of interest * * * should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. * * * It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking

irrespective of whom the inaccuracy benefits." Metropolitan Life, 128 S.Ct. at 2351. Although

many courts, including the Second Circuit, have recognized that UnumProvident and/or its

subsidiaries (collectively "Unum"), including UNUM Life, has a history of biased claims

administration, at least during the decade ending in 2003, see, e.g. McCauley, 551 F.2d at 137;

Hagopian v. Johnson Financial Group, Inc. Long-Term Disability Plan, an ERISA Plan, No. 09-

C-926, 2010 WL 3808666, at * 7-8 (E.D. Wis. Sept. 23, 2010) (citing cases); see also

Metropolitan Life 128 S.Ct. at 2351 (citing John H. Langbein, Trust Law as Regulatory Law: The

Unum/Provident Scandal and Judicial review of Benefit Denials Under ERISA, 101 Nw.

U.L.Rev. 1315, 1317-21 (2007), which detailed a history of abusive practices by Unum), the

conflict of interest evidenced from that history is offset, in part, by the active steps UNUM Life

took to promote accuracy in its claims management process in this case, i.e., repeated requests

and/or acceptances of additional information from plaintiff and reviews of plaintiff's file by

medical and vocational consultants. Accordingly, I have afforded some weight to UNUM Life's

inherent conflict of interest and Unum's history of biased claims administration during my

review of UNUM Life's denial of plaintiff's claims for benefits, but have not attached to those

factors the great importance seemingly advocated by plaintiff.[10]

---

[10] Indeed, the majority of courts that have reviewed determinations by UNUM Life to deny claims for benefits under ERISA plans since the Supreme Court targeted it in Metropolitan Life have upheld its determinations upon deferential review, notwithstanding the inherent conflict of interest and Unum's history of biased claims administration. Compare cases finding no abuse of discretion: Rosby v. Unum Life Ins. Co., 2010 WL 3310237, at * 1 (8th Cir. Aug. 24, 2010) (unpublished per curiam opinion); Harris v. Unum Life Ins. Co. of America, 379 Fed. Appx. 837 (11th Cir. May 13, 2010) (per curiam); Ford v. Unum Life Ins. Co. of America, 351 Fed. Appx. 703, 707-8 (3rd Cir. 2009) (per curiam); Holcomb v. Unum Life Ins. Co. of America, 578 F.3d 1187, 1193-4 (10th Cir. 2009); Kolosky v. Unum Life Ins. Co. of America, 297 Fed. Appx. 548, 548-9 (8th Cir. Nov. 4, 2008) (unpublished per curiam opinion); Roumeliote v. Long Term Disability Plan for Employees of Worthington Industries, 292 Fed. Appx. 472, 474 (6th Cir.

2.  Timeliness of Decision on Appeal

It is undisputed that UNUM Life violated applicable ERISA regulations by failing to

---

Sept. 11, 2008) (per curiam); Wakkinen v. Unum Life Ins. Co. of America, 531 F.3d 575 (8th Cir. 2008); Richard v. Unum Life Ins. Co. of America, 2010 WL 4117364 (W.D. Mich. Oct. 19, 2010); Owens v. Rollins, Inc., 2010 WL 3843765 (E.D. Tenn. Sept. 27, 2010); Corby v. Unum Life Ins. Co. of America, 2010 WL 3768040 (N.D. Cal. Sept. 21, 2010); Bush v. Unum Life Ins. Co. of America, 2010 WL 3064076 (S.D. Tex. Aug. 3, 2010); Stephan v. Thomas Weisel Partners, LLC, 2010 WL 2944226 (N.D. Cal. July 23, 2010); Burton v. Unum Life Ins. Co. of America, 2010 WL 2430767, at * 10-11 (W.D. Tex. June 14, 2010); Uquillas v. Unum Life Ins. Co. of America, 2010 WL 330255, at * 17 (C.D. Cal. Jan. 21, 2010); Nicely v. Unum Life Ins. Co. of America, 2009 WL 5201852 (M.D. N.C. Dec. 23, 2009); Seitles v. UNUMProvident, 2009 WL 3162219, at * 8 (E.D. Cal. Sept. 29, 2009); Fowler v. Unum Life Ins. Co. of America, 2009 WL 3064893 (W.D. Ky. Sept. 22, 2009); Holifield v. Unum Life Ins. Co. of America, 640 F.Supp.2d 1224, 1239-47 (C.D. Cal. 2009); Barnes v. Unum Life Ins. Co. of America, 621 F.Supp.2d 1097, 1105-8 (D. Or. 2009); Landry v. Unum Life Ins. Co. of America, 2009 WL 935962, at * 7 (W.D. La. Apr. 7, 2009); Sanders v. Unum Life Ins. Co. of America, 2009 WL 902046, at * 9 (M.D. Ga. Mar. 30, 2009); Stutler v. Unum Life Ins. Co. of America, 2009 WL 720921, at *6 (E.D. Ky. Mar. 16, 2009); Miller v. Unum Life Ins. Co. of America, 2009 WL 722735, at * 4 (D. Utah Mar. 1, 2009); Demand v. Unum Life Ins. Co. of America, 2009 WL 90480, at * 11-12 (N.D. Tex. Jan. 13, 2009); Harrison v. Catholic Healthcare West Group Long Term Disability Plan, 612 F.Supp.2d 1099-1109-1117 (C.D. Cal. 2009); Harper v. Unum Life Ins. Co. of America, 621 F.Supp.2d 931, 951-4 (E.D. Cal. 2008); Bartholomew v. Unum Life Ins. Co. of America, 588 F.Supp.2d 1262, 1273 (W.D. Wash. 2008); Larue v. Unum Life Ins. Co. of America, 2008 WL 4443265, at * 5 (S.D. W.Va. Sept. 23, 2008); Telmont v. Unum Life Ins. Co. of America, 2008 WL 3843536, at * 4 (E.D. Mich. Aug. 15, 2008); Bullock v. USF Group Benefits Plan, 2008 WL 2965724, at * 5 (E.D. Tenn. July 30, 2008); Gonzalez v. Unum Life Ins. Co. of America, 2008 WL 2949270, at * 9 (N.D. Cal. July 28, 2008); Kovitch v. Unum Life Ins. Co. of America, 581 F.Supp.2d 794, 800-1 (E.D. Mich. 2008); Mangione v. Unum Provident Corp., 2008 WL 2857180, at * 4 (D. Vt. July 21, 2008); and Troutman v. Unum Life Ins. Co. of America, 2008 WL 2757082, at * 6 (N.D. Cal. July 14, 2008); with cases finding an abuse of discretion: Scheuermann v. Unum Life Ins. Co. of America, 2010 WL 2725408, at * 4-5 (5th Cir. July 6, 2010) (per curiam); Chronister v. Unum Life Ins. Co. of America, 563 F.3d 773, 776 (8th Cir. 2009); Quinlisk v. Unum Life Ins. Co. of America, 2009 WL 6506884 (D. Mass. Sept. 29, 2009); Ettel v. Unum Life Ins. Co. of America, 2008 WL 5186537, at * 4-7 (W.D. Wash. Dec. 10, 2008); Eichelmann v. Unum Life Ins. Co. of America, 2008 WL 4833263, at * 14 (E.D. Ark. Nov. 5, 2008); Burdett v. Unum Life Ins. Co. of America, 2008 WL 4469094, at * 9 (E.D. La. Sept. 30, 2008); Key v. Unum Life Ins. Co. of America, 2008 WL 3925852, at * 7 (W.D. Wis. Aug. 20, 2008); Dejoe v. Unum Life Ins. Co. of America, 2008 WL 2945576 (D. Me. July 28, 2008), report and recommendation adopted by 2008 WL 3929581 (Aug. 27, 2008); and Cass v. Unum Life Ins. Co. of America, 2008 WL 2705467, at * 7 (S.D. Ohio July 9, 2008).

provide plaintiff with timely notice of its denial of her appeal of its determination denying her

claims for benefits. Nonetheless, although untimely, UNUM Life did eventually provide plaintiff

with a written determination detailing its reasons for the denial of her claims before she

commenced this action. Thus, as now conceded by plaintiff, UNUM Life's failure to provide

timely notice of its denial of her appeal does not affect the standard of review, see Demirovic v.

Building Services 32 B-J Pension Fund, 467 F.3d 208, 212 (2d Cir. 2006), although it may be a

factor to be considered upon deferential review of its determination to deny plaintiff's claims for

benefits.

     Although plaintiff characterizes UNUM Life's delay as a "procedural irregularity", (Plf.

Brief at 11, 13), it is not the type of procedural irregularity found by courts to weigh in favor of

finding an abuse of discretion. Such types of procedural irregularities typically involve an

element of bad faith or deception, examples of which include: (1) providing inconsistent reasons

for the denial of benefits claim; (2) emphasizing one medical report favoring a denial of benefits

while ignoring reports to the contrary; (3) unreasonably relying on the opinions of non-treating

physicians over the opinions of the plaintiff's treating physicians; (4) reversing an initial decision

to award benefits absent the receipt of new medical information or after a lengthy period of time;

(5) ignoring a finding of the Social Security Administration that the plaintiff could not work after

encouraging the plaintiff to seek that determination; and (6) failing to provide independent

vocational and medical experts with all relevant information. See, e.g. Diamond v. Reliance

Standard Life Ins., 672 F.Supp.2d 530, 536 (S.D.N.Y. 2009); Smith v. Novelis, No. 5:05-CV-

0957, 2009 WL 3164798, at * 13 (N.D.N.Y. Sept. 29, 2009). As I found in my prior order,

UNUM Life's delay in providing plaintiff with timely notice of the denial of her appeal was

occasioned, in part, by its additional medical and vocational reviews of her claim and receipt of additional information by plaintiff. There is no evidence in the record that UNUM Life's delay in rendering a determination was the result of any deception or bad faith. Moreover, plaintiff waited for UNUM Life to make its determination before commencing suit. Therefore, the delay was nugatory. Thus, this factor does not weigh in favor of finding an abuse of discretion by UNUM Life.

### 3. Substantial Evidence Supporting UNUM Life's Determination

Even reviewing UNUM Life's denial of plaintiff's claims for benefits with some level of skepticism in light of the inherent conflict of interest and its history of biased claims administration, I find that UNUM Life's determination was not arbitrary and capricious because its determination was supported by substantial evidence in the record. The administrative record indicates that UNUM Life reviewed all of the medical evidence submitted by plaintiff, including the opinions of her treating physicians; sufficiently investigated plaintiff's job requirements and ability to satisfy those requirements; and even requested additional information regarding plaintiff's restrictions, requirements of her occupation and medical documentation. In addition, UNUM Life obtained no less than four (4) opinions from reviewing physicians to whom it provided plaintiff's complete file, as well as two (2) opinions from vocational consultants regarding plaintiff's ability to perform the essential functions of her regular occupation.

#### a. Initial Determination

The medical records provided by plaintiff prior to UNUM Life's initial determination

indicate that plaintiff was diagnosed with the following impairments: (1) left lumbar disc herniation at L3-4, extending into the left neural foramen and abutting the left L3 nerve root, (R. 168); (2) a small right lumbar disc herniation at L5-S1 with slight impingement upon the right S1 nerve root, and bilateral arthrosis and stenosis at this level, (id.); (3) a bulging disc, mild bilateral arthrosis and mild to moderate bilateral stenosis without impingement at the L4-L5 level, (id.); (4) scoliosis, (R. 164); (5) diminished pin sensation "bilateral feet," (R. 220); (6) right L5 radiculopathy and left lumbosacral radiculopathy, but with full range of motion and strength and normal sensation, (R. 203); (7) "very mild" disc bulging at C2-C3 and C4-C5 levels; (8) mild disc bulging at C3-C4 and C5-C6 levels, with mild bilateral foraminal compromise at the C5-C6 level, (id.); and (9) a small central disc herniation at C6-C7, (id.). The only treatment for plaintiff's impairments indicated in the submissions are three (3) lumbar epidural injections in April 2002, May 2002 and June 2002. (R. 164). The only restrictions and limitations indicated in those records are based upon Dr. Leone's opinion that plaintiff was restricted in her ability to climb, bend, twist, push/pull and lift/carry more than ten (10) pounds and was limited in her ability for prolonged sitting, standing and walking to fifteen (15) minutes without a break. (R. 156, 170). Dr. Leone concluded that plaintiff was incapable of sedentary activity. With respect to plaintiff's symptoms, the records note, *inter alia*: (1) that Dr. Porges indicated that plaintiff's complaints were "somewhat atypical," (R. 220); and (2) that Dr. Leone indicated that the findings from the MRI of plaintiff's cervical spine were "not enough to account for [her] left upper extremity symptomology," (R. 181).

After obtaining no less than three (3) medical reviews of plaintiff's submissions by its own consultants (Poissant, Keller and LoCascio), as well as a vocational assessment (by

34

Hoffman), UNUM Life, while recognizing the existence of the impairments indicated by the records, reached a different conclusion than that of Dr. Leone with respect to the extent of plaintiff's disability based, in part, upon the inconsistencies in plaintiff's reported pain and objective findings, the minimal treatment sought by plaintiff for those impairments and her reported level of activity. Since the factors upon which UNUM Life relied in denying plaintiff's initial claims are supported by substantial evidence in the record, its determination to deny plaintiff's claims for benefits was reasonable. UNUM Life's reliance on the conclusions of its medical consultants, instead of on the opinion of one of plaintiff's treating physicians, was not arbitrary and capricious. See, e.g. Fortune v. Group Long Term Disability Plan for Employees of Keyspan Corp., No. 09-3882-CV, 2010 WL 3393758, at * 2 (2d Cir. Aug. 30, 2010) (holding that although the plaintiff's treating physicians offered opinions more supportive of her disability claim, the administrator was not required "to accord special weight to th[o]se opinions, nor did it bear a discrete burden of explanation because it credited reliable evidence that conflicted with a treating physician's evaluation." (internal quotations and citation omitted)); Fitzpatrick v. Bayer Corp., No. 04 Civ. 5134, 2008 WL 169318, at * 14 (S.D.N.Y. Jan. 17, 2008) (holding that although the administrator was required to consider the plaintiff's evidence fairly, it was not required to credit it over competing evidence); Lekperic v. Building Service 32B-J Health Fund, No. 02 CV 5726, 2004 WL 1638170, at * 4 (E.D.N.Y. Jul. 23, 2004) ("The mere existence of conflicting evidence does not render the [plan administrator's] decision arbitrary or capricious.") So long as evidence submitted by the plaintiff is not arbitrarily discredited by the administrator, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete

burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003).

b.  On Appeal

The additional records submitted by plaintiff following the initial denial of her claims indicate that plaintiff was diagnosed with the following additional impairments: (1) celiac disease, (R. 291); (2) a small or partial tear of the rotator cuff, without impingement, in her right shoulder, (R. 279-80), with peripheral neuropathy evidenced by tenderness on palpation that "did not follow any anatomic line or muscular compartment," (R. 334); (3) degenerative changes in her right knee, (R. 275-6); (4) right C5-C6 radiculopathy; and (5) osteoarthritis at L4-L5 and L5-S1, (R. 342). The records further indicate, *inter alia*, that plaintiff complained of numbness in her upper extremities and pain in her neck, right knee, legs, right shoulder and right foot, although she had full range of motion in her right shoulder and knees. (R. 267, 281, 335). The only treatment of plaintiff's impairments indicated in the additional records consists of two (2) injections in plaintiff's right shoulder. (R. 266-7).

In addition, plaintiff submitted a functional capacity assessment indicating, *inter alia*: (1) that she was limited in her capacity to sit to forty-five (45) minutes and in her capacity to stand to twenty-five (25) minutes; (2) that her limited sitting tolerance prevented her from returning to work where prolonged sitting was required; and (3) that alternating between sitting and standing was not feasible because plaintiff had reported that only lying down relieved her pain. (R. 258-65).

36

After obtaining another medical review by a physician (Fluter) who had not been involved in its initial determination, sending plaintiff's file back for a further medical review upon receipt of additional medical documentation from plaintiff and obtaining a second opinion from a different vocational consultant (Byard) regarding plaintiff's ability to perform the essential functions of her regular occupation, UNUM Life, upheld the initial determination to deny plaintiff's claims for benefits based, in part, upon the conclusion reached by its vocational consultants that plaintiff's impairments did not preclude her from performing the material duties of her own occupation. As stated above, UNUM Life's reliance on the conclusions of its vocational consultants, which are not unreasonable, instead of on the opinion of plaintiff's vocational consultant (Smith), which was based, in part, upon plaintiff's own subjective complaints and reports of limitations, was not arbitrary and capricious.

In sum, UNUM Life's denial of plaintiff's claims for LTD benefits and extension of life insurance benefits is supported by substantial evidence in the administrative record that her restrictions and limitations do not prevent her from performing the material and substantial duties of her occupation and was not unreasonable. See, e.g. Holcomb, 578 F.3d at 1193-4 (finding that Unum Life took steps to reduce the inherent conflict of interest by hiring two independent doctors, diligently endeavoring to discover the nature of the plaintiff's ailment by routinely requesting updated medical documentation, performing vocational assessments and furnishing its reviewing doctors with all necessary information); Seitles, 2009 WL 3162219, at * 8 (finding no abuse of discretion where the evidence showed that Unum made a reasonable conclusion based on the materials and records, offered to reassess the plaintiff's claim and conducted a further review of the records, and there was no evidence that the conflict of interest impacted its

37

decision); Sanders, 2009 WL 902046, at * 9 (finding no abuse of discretion where Unum investigated the case thoroughly and developed a complete record); Miller, 2009 WL 722735, at * 4 (finding no abuse of discretion were Unum subjected the plaintiff's complete medical file to professional review and took efforts to obtain additional information from the treating physicians). Cases that have found that Unum abused its discretion typically involved some type of error, deception or bad faith, such as inconsistencies in the reasons for denying the plaintiff's claim, a failure to consider all of the medical records, factual errors committed by Unum's reviewing physicians or inaccurate processing of the plaintiff's claims. See, e.g. McCauley, 551 F.3d at 135-6 (finding an abuse of discretion where there was evidence that the reason proffered for the denial was deceptive and inconsistent with the record, that the nurse reviewing the plaintiff's file erroneously failed to consider additional evidence submitted by the plaintiff, that "First Unum blithely ignored detailed descriptions constituting clear proof of total disability," that First Unum wholly "embrace[d] [] one medical report supporting a claim denial to the detriment of a contrary report that favor[ed] granting benefits" and that there had been no review of the plaintiff's records by a physician at First Unum); Scheuermann, 2010 WL 2725408, at * 4- 5 (finding an abuse of discretion because Unum's denial was not based on evidence clearly supporting the basis for its denial); Quinlisk, 2009 WL 6506884 (finding an abuse of discretion where Unum's reviewing doctor made two factual errors in his interpretation of the record and Unum "unduly discounted" the plaintiff's pain symptoms as subjective). Such errors or evidence of bad faith is absent here. Rather, there merely exists a conflict in the opinions of the parties' respective medical and vocational experts, which UNUM Life, upon consideration of all records, resolved against plaintiff. Therefore, and since there is no evidence that UNUM Life's inherent

conflict of interest and history of biased claims administration affected its benefits determination in this case, see, e.g. Kolosky, 297 Fed. Appx. at 548-9; Burton, 2010 WL 2430767, at * 10-11; Uquillas, 2010 WL 330255, at * 17, defendants are entitled to summary judgment dismissing the complaint in its entirety.[11]

III.     CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied, defendants' motion for summary judgment is granted and the complaint is dismissed in its entirety. The clerk of the Court is directed to enter judgment in favor of defendants and against plaintiff and to close this case.

SO ORDERED.

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: October 2 ?, 2010
        Central Islip, New York

---

[11] In light of this determination, it is unnecessary to address plaintiff's contentions regarding remand and attorney's fees. Although section 1132(g)(1) of ERISA permits a court to award reasonable attorney's fees and costs to either party in an action by a plan beneficiary to enforce his or her rights under ERISA, defendants have not requested an award of attorney's fees. Accordingly, neither party is awarded attorney's fees or costs.